```
         IN THE UNITED STATES DISTRICT COURT
       FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

                       CHARLESTON


KELLY LEE DURHAM,

        Plaintiff,

v.                                    CASE NO. 2:10-cv-01246

MICHAEL J. ASTRUE,
Commissioner of Social Security,

        Defendant.
```

**PROPOSED FINDINGS AND RECOMMENDATION**

This is an action seeking review of the final decision of the Commissioner of Social Security denying the plaintiff's application for disability insurance benefits ("DIB") and supplemental security income ("SSI"), under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 401-433, 1381-1383f. By standing order, this case was referred to this United States Magistrate Judge to consider the pleadings and evidence, and to submit proposed findings of fact and recommendation for disposition, all pursuant to 28 U.S.C. § 636(b)(1)(B).

Plaintiff, Kelly Lee Durham (hereinafter referred to as "Claimant"), filed applications for SSI and DIB[1] on May 14, 2008, alleging disability as of October 15, 2007, due to fibromyalgia, arthritis in both feet and both legs, epidermal delousa, and

---

[1] Claimant meets the insured status requirements of the Social Security Act for DIB purposes through December 31, 2012. (Tr. at 9.)

bipolar disorder.  (Tr. at 57.)  The claims were denied initially and upon reconsideration.  (Tr. at 52-61, 66-71.)  Claimant requested a hearing before an Administrative Law Judge ("ALJ"). (Tr. at 74-78.)  A hearing was held on September 9, 2009, before the Honorable William R. Paxton.  (Tr. at 19-47.)  By decision dated September 25, 2009, the ALJ determined that Claimant was not entitled to benefits.  (Tr. at 6-18.)  The ALJ's decision became the final decision of the Commissioner on August 25, 2010, when the Appeals Council denied Claimant's request for review.  (Tr. at 1-5.)  On October 22, 2010, Claimant brought the present action seeking judicial review of the administrative decision pursuant to 42 U.S.C. § 405(g).

Under 42 U.S.C. § 423(d)(5) and § 1382c(a)(3)(H)(i), a claimant for disability benefits has the burden of proving a disability.  See Blalock v. Richardson, 483 F.2d 773, 774 (4th Cir. 1972).  A disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable impairment which can be expected to last for a continuous period of not less than 12 months . . . ."  42 U.S.C. § 423(d)(1)(A).

The Social Security Regulations establish a "sequential evaluation" for the adjudication of disability claims.  20 C.F.R. §§ 404.1520, 416.920 (2008).  If an individual is found "not disabled" at any step, further inquiry is unnecessary.  Id. §§

404.1520(a), 416.920(a). The first inquiry under the sequence is whether a claimant is currently engaged in substantial gainful employment. Id. §§ 404.1520(b), 416.920(b). If the claimant is not, the second inquiry is whether claimant suffers from a severe impairment. Id. §§ 404.1520(c), 416.920(c). If a severe impairment is present, the third inquiry is whether such impairment meets or equals any of the impairments listed in Appendix 1 to Subpart P of the Administrative Regulations No. 4. Id. §§ 404.1520(d), 416.920(d). If it does, the claimant is found disabled and awarded benefits. Id. If it does not, the fourth inquiry is whether the claimant's impairments prevent the performance of past relevant work. Id. §§ 404.1520(e), 416.920(e). By satisfying inquiry four, the claimant establishes a prima facie case of disability. Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981). The burden then shifts to the Commissioner, McLain v. Schweiker, 715 F.2d 866, 868-69 (4th Cir. 1983), and leads to the fifth and final inquiry: whether the claimant is able to perform other forms of substantial gainful activity, considering claimant's remaining physical and mental capacities and claimant's age, education and prior work experience. 20 C.F.R. §§ 404.1520(f), 416.920(f) (2008). The Commissioner must show two things: (1) that the claimant, considering claimant's age, education, work experience, skills and physical shortcomings, has the capacity to perform an alternative job, and (2) that this specific job exists

3

in the national economy. McLamore v. Weinberger, 538 F.2d 572, 574 (4th Cir. 1976).

In this particular case, the ALJ determined that Claimant satisfied the first inquiry because she has not engaged in substantial gainful activity since the alleged onset date. (Tr. at 11.) Under the second inquiry, the ALJ found that Claimant suffers from the severe impairments of degenerative disc disease, chronic low back and right leg pain, pain with evidence of facet syndrome, epidermolysis bullosa, right S1 radiculopathy, bilateral foot pain consistent with neuropathy, bipolar disorder and posttraumatic stress disorder. (Tr. at 11.) At the third inquiry, the ALJ concluded that Claimant's impairments do not meet or equal the level of severity of any listing in Appendix 1. (Tr. at 11.) The ALJ then found that Claimant has a residual functional capacity for sedentary work, with exertional and nonexertional limitations. (Tr. at 13.) As a result, Claimant cannot return to her past relevant work as a waitress. (Tr. at 17.) Nevertheless, the ALJ concluded that Claimant could perform jobs such as hand picker [sic; packer], and mailing stuffer and labeler, which exist in significant numbers in the national economy. (Tr. at 18.) On this basis, benefits were denied. (Tr. at 18.)

Scope of Review

The sole issue before this court is whether the final decision of the Commissioner denying the claim is supported by substantial

4

evidence. In <u>Blalock v. Richardson</u>, substantial evidence was defined as

> "evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is 'substantial evidence.'"

<u>Blalock v. Richardson</u>, 483 F.2d 773, 776 (4th Cir. 1972) (quoting <u>Laws v. Celebrezze</u>, 368 F.2d 640, 642 (4th Cir. 1966)). Additionally, the Commissioner, not the court, is charged with resolving conflicts in the evidence. <u>Hays v. Sullivan</u>, 907 F.2d 1453, 1456 (4th Cir. 1990). Nevertheless, the courts "must not abdicate their traditional functions; they cannot escape their duty to scrutinize the record as a whole to determine whether the conclusions reached are rational." <u>Oppenheim v. Finch</u>, 495 F.2d 396, 397 (4th Cir. 1974).

A careful review of the record reveals the decision of the Commissioner is not supported by substantial evidence.

<u>Claimant's Background</u>

Claimant was 43 years old at the time of the administrative hearing. (Tr. at 25.) Claimant graduated from high school and worked as a waitress. (Tr. at 27.) When she began to have problems with her feet and legs, she returned to school and earned certificates in data entry and medical record keeping. (Tr. at 25, 27.) When she was uncomfortable doing desk work, she attempted

part-time work at a fast food restaurant and IHOP. (Tr. at 27-28.)

<u>The Medical Record</u>

The court has reviewed all evidence of record, including the medical evidence of record, and will address it with respect to each of Claimant's arguments.

<u>Claimant's Challenges to the Commissioner's Decision</u>

Claimant asserts that the Commissioner's decision is not supported by substantial evidence because (1) statements by Claimant's treating physicians and the objective evidence establish that she meets one or more listed impairments, and (2) the ALJ erred when he based his denial on Claimant's performance of some daily activities. (Pl.'s Br. at 1-14.)

The Commissioner argues that (1) the ALJ appropriately weighed the physicians' opinions in finding that Claimant's back impairment did not meet or equal the severity requirements of listing 1.04(A), and (2) the ALJ supported his credibility finding and correctly weighed the evidence concerning Claimant's alleged pain. (Def.'s Br. at 1-14.)

<u>Listings</u>

Claimant contends that she either meets or equals the descriptions of impairments in the Listing of Impairments, i.e., Musculoskeletal, Disorders of the Spine, § 1.04(A) and/or Neurological, Peripheral Neuropathies, § 11.14. The criteria for each listing, and Claimant's objective medical evidence and

physicians' statements are as follows:

> 1.04 *Disorders of the spine* (e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in compromise of a nerve root (including the cauda equina) or the spinal cord. With:
> A. Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine).

Pt. 404, Subpt. P, App. 1, § 1.04(A) (2009).

> 11.14 *Peripheral neuropathies.*
> With disorganization of motor function as described in 11.04B, in spite of prescribed treatment.

> 11.04 *Central nervous system vascular accident.* With one of the following more than 3 months post-vascular accident: . . .
> B. Significant and persistent disorganization of motor function in two extremities, resulting in sustained disturbance of gross and dexterous movements, or gait and station (see 11.00C).

> 11.00c. *Persistent disorganization of motor function* in the form of paresis or paralysis, tremor or other involuntary movements, ataxia and sensory disturbances (any or all of which may be due to cerebral, cerebellar, brain stem, spinal cord, or peripheral nerve dysfunction) which occur singly or in various combinations, frequently provides the sole or partial basis for decision in cases of neurological impairment. The assessment of impairment depends on the degree of interference with locomotion and/or interference with the use of fingers, hands, and arms.

Id., § 11.14.

On April 17, 2008, Claimant was seen by her primary care provider at Family Care. She complained that she was "still having

problems with feet/legs, low back pain." (Tr. at 308.) Office notes indicate "2/4 [deep tendon reflexes] right leg, negative straight leg raises, good [range of motion] cervical." Id.

On May 13, 2008, Claimant had a series of x-rays of her back and feet. The film of her cervical spine was interpreted as appearing "normal." (Tr. at 364.) An x-ray of her right foot showed a prominent calcaneal spur. (Tr. at 362.) The left foot also showed a calcaneal spur, larger than on the right foot. (Tr. at 361.) Her lumbar spine film was interpreted as "normal." (Tr. at 360.)

On May 20, 2008, notes from Family Care, in follow-up to the x-rays, indicate that she was positive for tender points at both hips, elbows and knees. (Tr. at 307.)

On July 9, 2008, Claimant underwent a consultative examination by Dr. Alfredo Velasquez, who reported as follows:

> HISTORY OF PRESENT ILLNESS: She gave a history of pain on both feet for a year and gradually becoming worse. She has had occasional pain in her lumbar area, which comes on and off and has been taking a lot of medications including antidepressant and antacid. * * *
> BACK/EXTREMITIES: The ranges of motion in the cervical area including fine movements of the forearms, hands, and fingers, and sensory motor reflexes were within normal limits. The lumbar area presents with slight tenderness in the lumbosacral area on the ranges of motion. Knee jerks, ankle jerks, sensory, and motor reflexes were normal except for occasional patchy, diminished pinprick sensation on the right foot.
> NEUROLOGICAL: Grossly normal
> DIAGNOSIS: Pain on both feet, etiology undetermined, probably fibromyalgia.

(Tr. at 281-83.)

On July 22, 2008, Claimant reported to the emergency room at Charleston Area Medical Center, complaining of pain in her right hip for the past one to two years, and a swollen foot. (Tr. at 292.) The ER physician wrote:

> EXTREMITIES: She has 5+5 muscle strength upper and lower extremities. There does appear to be some mild atrophy of the right calf muscles of the right lower leg. No peripheral edema, no tenderness of the joins. Dorsalis pedis, posterior tibial pulse 2+. She has some slight decrease in light touch to the great toe. Capillary refill less than 2 seconds. * * *
> NEUROLOGIC: Cranial nerves II-XII grossly intact. No noted sensory impairment. No pathologic reflex. No ataxia of gait. No antalgic gait. * * *
> EMERGENCY DEPARTMENT AND COURSE: The patient is given Toradol 60 mg IM, Lortab 7.5 mg p.o., Flexeril 10 mg p.o. On reassessment, she has obtained pain relief. She is ambulatory and shows no signs of cauda equinus syndrome. This is a rather unusual presentation. I consulted Dr. Walker because the patient does appear to have some mild atrophy of her calf muscles, however, he states that due to this fact that she has no complaints along any dermatome and it is paresthesia of her toes that he requests that she be evaluated by a neurologist. I then discussed this case with Dr. Dave who was in the emergency room and he is also the neurologist on call. He requested an MRI be obtained as to Dr. Walker. Again, this is a chronic process. There is nothing acute. It was determined that the patient can be discharged to home with close follow-up. * * * She states that the pain medication has alleviated her symptoms.
> CLINICAL IMPRESSION: Acute on [sic; or?] chronic back pain with right sciatica and paresthesia right toe, bipolar disorder.

(Tr. at 292-93.) An x-ray showed a normal lumbar spine. (Tr. at 295.)

On August 20, 2008, Claimant had an MRI of her lower spine without contrast. Dr. Michael E. Anton interpreted the results:

> IMPRESSION: Marrow edema involving the right inferior

9

>facet joint of the L4 vertebral body. There is also adjacent muscular edema. Correlation with history of trauma is suggested to exclude a fracture. Other etiologies could include inflammatory infectious processes. Alternatively, if the patient has had some type of facet injection, this could explain the findings in the MRI. No advanced canal or neural foraminal narrowing was present.

(Tr. at 303.)

Dr. Dave examined Claimant on August 21, 2008, noting the emergency room visit of July 22, 2008. (Tr. at 377-78.) He found Claimant to have "normal" strength in upper and lower extremities; her sensory attributes were "normal for all modalities except patchy loss in right lower extremity." (Tr. at 377.) Her straight leg raise was positive. Id. He had reviewed the MRI of her lumbar spine and noted the "marrow signal abnormalities." Id. His assessment was

>back pain - chronic. Paresthesia in lower extremity. Abnormalities in MRI of lumbar spine. Lumbar/Lumbosacral disc degeneration # 722.51. [History of] motor vehicle accident #E819.9 11 years ago. **Plan/Recommendations**: 1) Her back pain and Paresthesia is due to lumbar radiculopathy related 2) she has abnormalities in MRI of lumbar spine. She has abnormalities marrow signal with edema in right interior facet joint. Differential diagnosis includes infection, trauma, fracture, etc. 3) At present no particular neurological work up. Treatment needed. She will need neurosurgical evaluation for above mentioned abnormalities in MRI. Due to worsening of pain and possibility of infection, I have advised her to go to emergency room for further evaluation including evaluation by spine surgery/neurosurgery. Treatment of back pain with nonsteroidal anti-inflammatory drugs, heat application, muscle relaxors advised. Follow-up as needed.

(Tr. at 378.)

The State Disability Determination consultant, Dr. Rafael Gomez, concluded that Claimant had "non severe physical impairment," (tr. at 386), but he did not have the benefit of the MRI report and Dr. Dave's assessment.

On October 2, 2008, Claimant was seen by Dr. Matthew P. Walker, a neurologist, upon referral by Dr. Dave. He examined her and reported as follows:

> On PHYSICAL EXAMINATION she is alert and oriented x 3, with a pleasant affect. She ambulates with a nonantalgic gait. Toe and heel walking were intact. No problem with balance or coordination. Range of motion of the lumbar spine was somewhat limited in flexion and extension due to back pain. No pain to palpation of the lumbar spine. Skin was otherwise intact over the lumbar spine. No specific pain to palpation of the lumbar spine. Isolated strength testing of bilateral lower extremities reveals strength to be 5/5. Sensation was decreased to light touch in both feet diffusely, the right foot worse than the left. Reflexes are equal and intact in the knees and ankles. No spasticity or clonus. Negative straight leg raise. Range of motion of the hips, knees and ankles was full and painless. No evidence of instability in the joints. No significant edema in the lower extremities.
> RADIOGRAPHIC STUDIES: MRI shows some mild degenerative disc disease with some spondylosis of the facets with some increased fluid within the facet at L4-5 on the right. No evidence of any significant neurologic compression.
> IMPRESSION: 1. Bilateral foot pain consistent with neuropathy. 2. Low back pain with mild spondylosis and facet arthropathy.
> RECOMMENDATION: I think her dominant complaint being the numbness, tingling, and pain in her feet is more consistent with neuropathy. I would recommend an EMG nerve con[duction] study.

(Tr. at 403-04.)

On January 9, 2009, Claimant underwent a sensory nerve conduction study by Dr. Samina Kazmi, who is Board-certified in

11

clinical neurophysiology. The findings were:

> very small amplitude of right sural with essentially normal peak latency. Right superficial peroneal was absent. Left superficial peroneal was present with small amplitude and normal peak latency. Left sural was unobtainable.
>
> Motor examination showed normal right tibial, right common peroneal and left common peroneal response. F wave latency of right common peroneal and right tibial was okay. Needle EMG of bilateral lower extremity was performed which showed soft evidence of acute denervation in right gastrocnemius medial head and right tibialis posterior. In addition, right abductor pollicis brevis also showed a few fibrillation potentials.
>
> INTERPRETATION: The above findings are suggestive of electrodiagnostic evidence of an acute right S1 radiculopathy. In addition, a mild early distal symmetric large fiber polyneuropathy may also be present. Clinical correlation is recommended.

(Tr. at 418, 488.)[2]

On March 10, 2009, Claimant had another MRI of her lumbar spine, with and without contrast. The impression was "L4-5 and L5-S1 facet degenerative change without focal disc rupture or significant canal stenosis. There is bilateral mild L5-S1 neural foraminal narrowing." (Tr. at 501.)

On March 25, 2009, Claimant was seen by neurologist Dr. Kiren Kresa-Reahl for follow-up after the March 10 MRI. The doctor noted that the MRI showed "significant facet degeneration at L4-L5, L5-S1." (Tr. at 499.) The objective findings upon examination were

---

[2] On June 23, 2006, Dr. Kazmi performed a nerve conduction study which showed no electrodiagnostic evidence of a large fiber distal symmetric polyneuropathy, although a small fiber polyneuropathy could not be totally excluded. (Tr. at 454.)

as follows:

> Motor strength is 5/5 throughout all groups, with normal bulk and tone. DTRs are trace in the upper extremities, absent in the lower extremities except for 1+ at the left ankle, with plantar response mute bilaterally. Sensation is impaired to temperature in a stocking distribution bilaterally. Coordination is intact to finger-to-nose bilaterally. Gait is intact to heel, toe, and tandem walk. Rhomberg is negative.
>
> MRI with marrow edema at L4, no particular stenosis or foraminal narrowing (not yet viewed by me personally).
> ASSESSMENT:
> Chronic low back pain and right leg pain with MRI evidence indicating Facet Syndrome.
> PLAN:
> I will refer to Dr. Bowman for pain management and therapy.
> Dx: Facet Syndrome.

Id.

On May 11, 2009, State Disability Determination medical consultant Dr. Rogelio Lim reviewed the medical evidence, including the report of the March 10 MRI and concluded that Claimant was capable of frequently lifting 25 pounds, occasionally lifting 50 pounds, standing, walking or siting about 6 hours in an 8 hour workday, with unlimited pushing and pulling. (Tr. at 563.) His notes state: "allegations not fully credible. Sensation normal. Coordination intact. MRI of LS spine no stenosis. Neuro intact. No objective findings of radiculopathy. DJD [degenerative joint disease] of LS spine." (Tr. at 569.)

The ALJ compared Claimant's medical evidence with the criteria in the Listings and wrote the following regarding her back impairment:

13

> The claimant does have some mild scoliosis and degenerative spurring in the lumbar spine, and also some moderate degenerative changes in the cervical spine with mild disc space narrowing and moderate anterior osteophyte formation; however, there is no evidence of nerve root compression or spinal arachnoiditis (Exhibit 7F, page 2). Neither is there evidence of lumbar spinal stenosis resulting in an inability to ambulate effectively (Exhibit 11F, page 4). The degenerative changes show no evidence of motor loss, reflex loss, or neuro-anatomic distribution of pain, nerve root compression, or compromise of a nerve root (Exhibit 11F, page 4) and thus, Listing 1.04 is not met.

(Tr. at 12.) Elsewhere in the ALJ's decision, he recites the objective medical evidence which is quoted above, but without analysis. (Tr. at 14-15.)

The undersigned has searched in vain for statements in the medical evidence which mirror the ALJ's findings with respect to whether Claimant meets Listing 1.04. Exhibit 7F, page 2, the August 20, 2008 MRI report found at page 303 of the transcript, contains no mention of scoliosis, degenerative spurring, moderate degenerative changes in the cervical spine with mild disc space narrowing and moderate anterior osteophyte formation, and the undersigned cannot determine the source for these findings. Conversely, the MRI report does not state that "there is no evidence of nerve root compression or spinal arachnoiditis," and the undersigned must assume that the ALJ reached these conclusions based on the absence of such phrasing. Notably, the MRI report contains language that "there is bilateral facet ligamentum flavum hypertrophy," and "mild diffusion extension of disc signal," but

14

"no eccentric left lateral component," yielding the possibility of the condition causing "advanced canal stenosis." (Tr. at 303.) The ALJ's citation to Exhibit 11F, page 4 (tr. at 404), which is Dr. Walker's report of Claimant's examination on February 5, 2009, is somewhat off; his physical examination notes are found at page 403 of the transcript, and they do indicate that Claimant had a negative straight leg raise. It is simply impossible to determine the basis for some of the ALJ's conclusions.

When the medical evidence is compared with the Listings, it appears that Claimant has chronic back pain from degenerative disc disease and some measure of facet arthritis, perhaps without compromise of a nerve root or the spinal cord. She has had a positive straight leg raise test administered by a neurologist (tr. at 377), and negative straight leg raise tests; she has demonstrated sensory and reflex loss. There is no recent report of atrophy and muscle weakness. There is no evidence of persistent disorganization of motor function.

The ALJ gave no weight at all to the State Disability Determination medical consultants' opinions, and found that Claimant was capable only of sedentary work, thus impliedly crediting her complaints. Unfortunately, a medical consultant with expertise in neurology and/or orthopedics did not testify at the hearing, to provide expert interpretation of the considerable objective evidence of impairment. Due to the puzzling and

15

unsupported findings by the ALJ with respect to whether Claimant met the criteria in the Listings, the undersigned must propose that the presiding District Judge **FIND** that the Commissioner's decision denying benefits is not supported by substantial evidence.

Claimant's second argument is that the ALJ improperly relied on Claimant's statements as to her daily activities to support the denial of benefits. (Pl.'s Br., at 11-13.)

The ALJ wrote the following with respect to Claimant's daily activities:

> With regard to the claimant's activities of daily living, the claimant has described daily activities which are not limited to the extent one would expect, given the complaints of disabling symptoms and limitations. The claimant continues to maintain her home, reporting that she cleans, does laundry, and waters the plants. She grocery shops regularly, attends counseling and doctor's appointments regularly, and attends church when her spouse is available to go with her (Exhibit 4E, page 5).

(Tr. at 16.)

Exhibit 4E is the Function Report - Adult, completed by Claimant by July 6, 2008. (Tr. at 178-85.) She described her daily activities:

> Make bed, put dishes up from previous night. Let pets out, check their food and water. Eat. Start laundry, attempt housecleaning, start dinner. Husband helps with dinner and dishes. Sometimes have to walk to grocery store (no car). Take shower. In bed by 8 pm (husband has to be at work at 4-5 am). Phone parents and children.

(Tr. at 178.) She wrote that "severe pain in feet, legs, numbness, tingling, stabbing pains, cramping," affect her sleep. (Tr. at

16

179.) She explained on the form that she can lift only ten pounds, cannot squat, bending is painful, she cannot stand for long, when walking her right leg goes out, she falls frequently, her balance is bad. (Tr. at 183-85.) She cannot walk the dog alone because of the numbness and pain in her leg and foot. (Tr. at 185.) She must elevate her leg. Id.

    At the hearing, Claimant testified that she cannot work due to the pain in her leg. (Tr. at 29.) She stated that she cannot walk very far at all. Id. When she cooks, she must lean over the counter, or sit on a chair. Id. Her husband helps her with such activities. (Tr. at 30.) It is only three blocks from her home to the bus stop or to the grocery store. Id. When she sits, her legs and foot start to swell and hurt with throbbing pain. (Tr. at 34-35.) She can sit for 15 to 30 minutes. (Tr. at 35.) These symptoms, if credited, are inconsistent with the ability to work an 8-hour day, even at the sedentary exertional level. The court notes that Claimant has a strong work record and attempted sedentary work at Wells Fargo.

    The ALJ apparently did not credit her testimony. He wrote the following:

> The claimant has not generally received the type of medical treatment one would expect for a totally disabled individual. Further, the claimant's use of medications does not suggest the presence of an impairment which is more limited than found in this decision. The record strongly suggests that the claimant has exaggerated symptoms and limitations.

17

(Tr. at 15.)

Social Security Ruling 96-7p clarifies when the evaluation of symptoms, including pain, under 20 C.F.R. §§ 404.1529 and 416.929 requires a finding about the credibility of an individual's statements about pain or other symptom(s) and its functional effects; explains the factors to be considered in assessing the credibility of the individual's statements about symptoms; and states the importance of explaining the reasons for the finding about the credibility of the individual's statements.  The Ruling further directs that factors in evaluating the credibility of an individual's statements about pain or other symptoms and about the effect the symptoms have on his or her ability to function must be based on a consideration of all of the evidence in the case record. This includes, but is not limited to:

- The medical signs and laboratory findings;

- Diagnosis, prognosis, and other medical opinions provided by treating or examining physicians or psychologists and other medical sources; and

- Statements and reports from the individual and from treating or examining physicians or psychologists and other persons about the individual's medical history, treatment and response, prior work record and efforts to work, daily activities, and other information concerning the individual's symptoms and how the symptoms affect the

18

individual's ability to work.

The undersigned proposes that the presiding District Judge **FIND** that the ALJ's brief remarks concerning his expectations for a totally disabled individual fail to meet the requirements of the Social Security regulations, and that the Commissioner's decision denying benefits is not supported by substantial evidence.

For the reasons set forth above, it is hereby respectfully **RECOMMENDED** that the presiding District Judge **REVERSE** the final decision of the Commissioner, **REMAND** this case pursuant to the fourth sentence of 42 U.S.C. § 405(g), and **DISMISS** this matter from the court's docket.

The parties are notified that this Proposed Findings and Recommendation is hereby **FILED**, and a copy will be submitted to the Honorable Thomas E. Johnston, United States District Judge. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(d) and 72(b), Federal Rules of Civil Procedure, the parties shall have fourteen days (filing of objections) and then three days (mailing/service) from the date of filing this Proposed Findings and Recommendation within which to file with the Clerk of this court, specific written objections, identifying the portions of the Proposed Findings and Recommendation to which objection is made, and the basis of such objection.  Extension of this time period may be granted for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of de novo review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. Snyder v. Ridenour, 889 F.2d 1363, 1366 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140, 155 (1985); Wright v. Collins, 766 F.2d 841, 846 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91, 94 (4th Cir. 1984). Copies of such objections shall be served on opposing parties and Judge Johnston.

The Clerk is directed to file this Proposed Findings and Recommendation and to transmit a copy of the same to counsel of record.

February 1, 2012
    Date

Mary E. Stanley
United States Magistrate Judge